UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

RLD, INC., No. 11-14071

                Debtor(s).
_____/

Memorandum re Plan Confirmation
_____

**I.    Facts**

On January 25, 2011, Lorraine Ring filed a Chapter 11 petition. On November 7, 2011, related entity RLD, Inc. filed its Chapter 11 petition commencing this case. The two debtors are co-obligors on a promissory note in the original principal amount of $10.5 million in favor of Exchange Bank, secured by a first priority deed of trust against the real property located at 4754 Old Redwood Highway, Santa Rosa, California. Ring and RLD are each 50% owners of the property.

In the Ring case, a consensual plan was confirmed on May 7, 2012. The secured creditors, including Exchange Bank, bargained for and were granted a provision in the order confirming the plan that it was contingent on confirmation of a plan in the RLD case which contained the same treatment for secured claims. Their motivation was clear; they did not want to agree to terms in the Ring case and then have to argue against less favorable terms in the RLD case.

The Ring plan specified that Exchange Bank would be paid pursuant to the Conditional Modification Agreement dated February 1, 2010, as modified by seven provisions in the plan. Exchange Bank does not deny that throughout negotiations, it was in possession of this Conditional Modification Agreement. Exchange Bank's Vice President has declared that throughout the

negotiations he was under the mistaken belief that the interest rate, pursuant to the Agreement, was fixed at 6.75%. None of the provisions in the plan affected the interest rate specified in the Conditional Modification Agreement.

The plan filed in the RLD case properly mirrored the terms of the Ring plan, as agreed. However, as the plan neared confirmation, Exchange Bank suddenly realized that by the terms of its note the interest rate associated with the loan would lower to 3.125%. Instead of returning to the Ring plan, the Bank instead focused its attention solely on the RLD plan. Exchange Bank objected to the plan, which included the terms to which it previously agreed, arguing that the plan is not fair and equitable pursuant to § 1129(b)(1), on account of the 3.125% interest rate.

Confirmation of the RLD plan is now before the court, together with motions by Ring and a secured creditor to enforce the agreement made in the Ring case and a motion by RLD to designate the Exchange Bank's rejection of its plan as being in bad faith.

**II. Motion for Order Enforcing Compromise**

Essentially, Exchange Bank seeks to rescind the compromise upon which resulted in confirmation of the Ring plan based on its unilateral mistake of fact. Under California law, a party may rescind a contract if his or her consent was given by mistake. Cal. Civ. Code § 1689(b)(1). A mistake of fact is "a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in . . . an unconscious ignorance or forgetfulness of a fact past or present, material to the contract." Cal. Civ. Code § 1577. Where a party wants to rescind a contract based on a unilateral mistake of fact and the other party has no reason to know of and did not cause the mistake of fact, the party seeking rescission must establish that: (1) he made a mistake regarding a basic assumption upon which he made the contract; (2) the mistake has a material effect upon the agreed exchange of performances that is adverse to him; (3) he does not bear the risk of the mistake; and (4) the effect of the mistake is such that enforcement of the contract would be unconscionable. *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 282 (2001).

2

Here it is clear from the declaration of the Exchange Bank's Vice President that the first two elements are not at issue. Exchange Bank made a unilateral mistake. The mistake involved a basic assumption upon which it agreed to the Ring plan, i.e. that the interest rate would remain fixed at 6.75%. The other parties were not guilty of any sort of deception. Exchange Bank merely did not consider the terms of the note it held.

While the mistake was material, it is dubious that Exchange Bank could establish that it did not bear the risk of the mistake. A party bears the risk of a mistake when (a) the risk is allocated to him by agreement of the parties, (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so. Restat. 2d of Contracts, § 154. The first two conditions to do not apply to the facts here. As to the third, it appears reasonable to allocate the risk to Exchange Bank. While ordinary negligence does not constitute neglect of a legal duty within the meaning of Civil Code § 1577, during the negotiation stage each party is held to a degree of responsibility appropriate to the justifiable expectations of the other. *M.F. Kemper Constr. Co. v. Los Angeles*, 37 Cal. 2d 696, 702 (1951); *Donovan v. Rrl Corp.,* 26 Cal. 4th at 284. Here, where the Exchange Bank requested that the terms of the note remain unchanged, and Exchange Bank had full access to the note, it should be responsible for knowing the contents of the note including the adjusted interest rate.

Nor does it appear that Exchange Bank's mistake resulted in an unconscionable contract. Here, the effect is that the interest rate on the note would remain at 3.125% as originally negotiated when Exchange Bank funded the loan. Presently, the prime rate is 3.25%, and Exchange Bank argues that RLD would be able to obtain an interest rate only as low as 5.25% on the open market. However, parties are free to make agreements as they see fit, and it is not outside the realm of possibility that a bank would issue a loan with an interest rate adjusted to 3.125%. Indeed, Exchange Bank did just that. Accordingly, it does not appear the Exchange Bank has proper grounds to rescind its agreement. However, as noted below, Exchange Bank has not sought rescission.

**III. Motion for Order Designating Ballot Filed in Bad Faith**

RLD and Ring have each filed a motion to disallow Exchange Bank's vote, arguing it was not made in good faith and is thus disallowable pursuant to § 1126(e). Courts have recognized that such relief is not to be granted lightly. *In re DBSD N.Am., Inc.*, 634 F.3d 79, 101 (2d Cir. 2010). However, the concept of good faith is a fluid one, thus designating a party's vote on a proposed Chapter 11 plan is highly fact-intensive and requires a close examination of the circumstances. *In re Figter Limited*, 118 F.3d 635, 639 (9th Cir. 1997). A party seeking to designate another's vote bears the burden of proving that it was not cast in good faith. *In re DBSD N. Am., Inc.*, 634 F.3d at 102. The test for whether a vote on a proposed Chapter 11 plan may be designated based on bad faith is whether the creditor has cast that vote with an ulterior purpose, aimed at gaining some advantage to which he would not otherwise be entitled in his position. *In re Greenwood Point, LP,* 445 B.R. 885, 898 (Bkrtcy.S.D.Ind. 2011).

Here, it is clear that the Exchange Bank has an ulterior motive. By objecting to and voting against the RLD plan, the effect the Exchange Bank seeks to achieve is to render the Ring plan meaningless and thereby undo its mistake. Instead of seeking rescission of the Ring plan (which it is unlikely to obtain), it is using the RLD plan to achieve the same result. Accordingly, Exchange Bank's vote was not cast in good faith and should be so designated, and thus disregarded, in considering confirmation of the RLD plan.

**IV. Alternative Analysis**

Although the parties have not framed the issue this way, there is an alternative analysis of this situation. Since the Ring plan fixed the rights of Exchange Bank and the RLD plan does not alter those rights, Exchange Bank is unimpaired by the RLD plan pursuant to § 1124(1) of the Bankruptcy Code and is deemed to have accepted the plan pursuant to § 1126(f).

4

**V. Conclusion**

Exchange Bank consented to a plan of reorganization in the Ring case based on its unilateral mistake. Recognizing that it was not likely to obtain relief from its mistake in that case, it has rejected the plan in this case even though it negotiated for these terms as a condition of its agreement to the Ring plan. Accordingly, its rejection was not in good faith. Alternatively, Exchange Bank is not impaired by the RLD plan because its rights under the Ring plan are not altered.

For the foregoing reasons, the court will grant the 1126(e) motion and the motion to enforce the settlement, overrule the Exchange Bank's objection to confirmation, and confirm the plan. Counsel for RLD shall submit an appropriate form of order.

Dated: August 21, 2012

Alan Jaroslovsky
U.S. Bankruptcy Judge

5